Steven N. Kurtz, Esq. [SBN 125972]
Lori E. Eropkin, Esq. [SBN 253048]
**LEVINSON ARSHONSKY & KURTZ, LLP**
15303 Ventura Blvd., Suite 1650
Sherman Oaks, CA 91403
Telephone:  (818) 382-3434
Facsimile:  (818) 382-3433
E-Mail:        skurtz@laklawyers.com
                    leropkin@laklawyers.com

Attorneys for Creditor
Sallyport Commercial Finance, LLC

### UNITED STATES BANKRUPTCY COURT

### CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| In re: | Case No. 2:19-bk-12936-BB |
| SHAOQIANG CHEN, | Chapter 7 |
| Debtor. | Adv. Case No. |
| _____ | |
| SALLYPORT COMMERCIAL FINANCE, LLC, | **COMPLAINT FOR:** |
| Plaintiff, | **(1) – (4)  Denial of Discharge as to All Debts [11 U.S.C. §§ 727(a)(2)-(5)];** |
| vs. | **(5) – (8)  Exception to Discharge of Certain Debts [11 U.S.C. §§ 523(a)(2)(B), (2)(A), (4), and (6)]** |
| SHAOQIANG CHEN, an individual, also known as SHAO QIANG CHEN also known as CHEN SHAOQIANG also known as STEVE CHEN, | |
| Defendant. | |

Plaintiff, Sallyport Commercial Finance, LLC, a Delaware limited liability company

("Sallyport" or "Plaintiff") represents and alleges as follows:

### JURISDICTION; VENUE; CONSENT TO ENTRY OF FINAL ORDERS; PARTIES

1.      This adversary proceeding arises out of and relates to the chapter 7 case of *In re*

*Shaoqiang Chen* commenced on March 18, 2019 (the "Petition Date"), by the Debtor Shaoqiang

Chen pursuant to his voluntary Chapter 7 petition filed under Title 11 of the U.S. Bankruptcy Code.

Carolyn A. Dye has been appointed as Chapter 7 Trustee for the Debtor's bankruptcy estate. The

Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334. This

*LEVINSON ARSHONSKY & KURTZ, LLP*

2353-037/844299_4

1  adversary proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (I), (J), and (O), and the

2  Court can and should enter a final judgment. To the extent that certain claims are determined to be

3  non-core matters, because the core aspects of this adversary proceeding are heavily predominant and

4  noncore aspects are related to these claims, this Court has authority to hear and determine these

5  claims.  Plaintiff consents to this Court's entry of final orders or judgment.

6      2.    This is an action brought under Federal Rules of Bankruptcy Procedure 7001(6), 4004

7  and 4007 and under 11 U.S.C. §§ 523 and 727 to determine the dischargeability of a certain debt and

8  to determine discharge of all debts.

9      3.    Venue is proper in this district pursuant to 28 U.S.C. § 1409.

10      4.    Plaintiff is a Delaware limited liability company with its headquarters in Sugar Land,

11  Fort Bend County, Texas.  Plaintiff is in the business of factoring and holds a duly issued finance

12  lenders license from the State of California.

13      5.    Plaintiff is informed and believes, and based thereon alleges, that Defendant

14  Shaoqiang Chen is an individual also known as Shao Qiang Chen also known as Steve Chen also

15  known as Chen Shaoqiang ("Chen" or "Debtor") and that Debtor is a resident of the City of

16  Hacienda Heights, Los Angeles County, California. Defendant is the debtor in the underlying

17  chapter 7 bankruptcy case entitled *In re Shaoqiang Chen*, Case No. 2:19-bk-12936-BB.

18  **SUMMARY**

19      6.    From 2015 to 2018, Sallyport provided purchase order financing and factoring to

20  three wholesale seafood businesses that Debtor controlled. These businesses were Yihe Corporation,

21  a California corporation ("Yihe"), Alaskan Jack's Seafood Corporation, an Alaskan corporation

22  ("Alaskan Jack's"), and Yihe Seafood Corporation, a British Columbian company ("Yihe Seafood").

23  Based on its investigation following the defaults of Debtor's businesses to Sallyport, Sallyport is

24  informed and believes, and on that basis alleges, that, to induce Sallyport to initially finance, and

25  continue to finance, Debtor's seafood deliveries and operations, Debtor and his agents, among other

26  things, (i) misrepresented to Sallyport the eligibility of particular accounts receivable for purchase

27  under their financing agreements with Sallyport, (ii) included false statements in credit insurance

28  confirmations and other presented to Sallyport to induce Sallyport to fund accounts receivable, and

LEVINSON ARSHONSKY & KURTZ, LLP

2

1   (iii) misdirected and converted customer payments on accounts receivable that Debtor had caused

2   his businesses to sell and assign to Sallyport.

3        7.    In his underlying Chapter 7 case, Debtor has indicated in his schedules that he is

4   unemployed and not earning income, individually. However, Debtor's schedules and Statement of

5   Financial Affairs omit references to numerous entities that Debtor has managed or controlled, both

6   in connection with the scheme to defraud Sallyport and otherwise. Plaintiff is informed and believes,

7   and based thereon alleges, that Debtor's omissions in his schedules have concealed income or other

8   assets to which the estate is entitled, which Plaintiff is still investigating.

9        8.    Plaintiff is informed and believes, and based thereon alleges, that, at all times herein

10   mentioned, Debtor has maintained, directed, and/or controlled the affairs of Yihe, Alaskan Jack's,

11   and Yihe Seafood, along with Premium Fish, Inc., a California corporation, and Global Fishery

12   Corporation, a California corporation, in service of his schemes to fraudulently elicit funding from

13   Sallyport and convert the proceeds of Sallyport's collateral, and that Debtor has acted by and

14   through these businesses and their principals and employees, as his agents, to accomplish the

15   conduct complained of in this Complaint. At all times, in doing the things herein alleged, Debtor's

16   agents were acting within the course and scope of such agency, service, employment or

17   representation. As of June 20, 2019, Sallyport has incurred losses of, at least, $1,562,191.97, plus

18   additional attorneys' fees, costs, and other charges, in connection with Debtor's fraudulent

19   representations and omissions to Sallyport.

20   **BACKGROUND ON FINANCING RELATIONSHIPS BETWEEN SALLYPORT AND**

21   **YIHE, ALASKAN JACK'S, AND YIHE SEAFOOD**

22        9.    Factoring involves the purchase of Accounts (as defined below) from businesses.[1]  In

23   factoring, the entity that purchases the Accounts is known as the "Factor" or "Purchaser" of the

24   Accounts.  The entity from whom the Factor purchases the Accounts is the "Factoring Client" or

25

26       [1]  **Applicable Law.** Article 9 of the Uniform Commercial Code governed the financing

27   transactions at issue here. TEX. BUS. & COM. CODE ANN. § 9.109 (West)(a)(1)-(3); *see also*
CAL. COM. CODE § 9109(a)(1)-(3) (identical). Because Sallyport's financing agreements were

28   expressly governed by Texas law, this Complaint includes references to Texas's adoption of
Article 9 of the Uniform Commercial Code in explaining Plaintiffs' rights as a secured
creditor in this action.

LEVINSON ARSHONSKY & KURTZ, LLP

3

LEVINSON ARSHONSKY & KURTZ, LLP

1    "Seller" of the Accounts. The Factoring Client's customer, who owes payment on the Accounts, is

2    an "Account Debtor."

3        10.    As a Factor, Sallyport advances funds to its Factoring Clients by purchasing the

4    Factoring Client's Accounts.[2]  In the dual purchase order financing and factoring facilities that

5    Sallyport extended to Chen's businesses, this purchase occurred in two stages. First, Debtor, on

6    behalf of Yihe, Alaskan Jack's, or Yihe Seafood, would present to Sallyport purchase orders from

7    Yihe, Alaskan Jack's, or Yihe Seafood's Account Debtors for seafood products. If the purchase

8    order met certain criteria, Sallyport would advance funds based on an agreed percentage to Debtor's

9    supplier for the cost of the seafood necessary to fill the purchase order. Second, after the supplier

10    filled the purchase order, Yihe, Alaskan Jack's, or Yihe Seafood would invoice the Account Debtor

11    and present the invoice, along with the proof of the purchase order's fulfillment, to Sallyport.

12    Sallyport could then purchase the Account, if eligible under the terms of the parties' financing

13    agreements.  And Sallyport would collect the Account directly from the Account Debtor.

14        11.    In the factoring relationship, Sallyport takes a security interest in the Factoring

15    Client's assets (including but not limited to all of its Accounts) to secure repayment and performance

16    of the Factoring Client's obligations to Sallyport.  Sallyport also provides notice to all of the

17    Factoring Client's customers, i.e., the Account Debtors,[3] that the Factoring Client's Accounts have

18    been assigned to Sallyport for payment and that all obligations owed to the Factoring Client are to be

19    paid directly to Sallyport (including amounts owed on Accounts which the Factor has not

20    purchased).  With respect to the Accounts that the Factor has purchased, once purchased, the

21    Factoring Client does not retain any legal or equitable interest in the Accounts sold.  See TEX. BUS.

22    & COM. CODE ANN. § 9318(a) ("[a] debtor that has sold an account . . . does not retain a legal or

23    equitable interest in the collateral sold"); CAL. COM. CODE § 9318(a) (identical).   All legal and

24

25    ────────────────────

26    [2]    Texas Business and Commerce Code § 9.102(a)(2), in relevant part, defines "[a]ccount" as
"... a right to payment of a monetary obligation, whether or not earned by performance, (i)
for property that has been or is to be sold, leased, licensed, assigned, or otherwise disposed
27    of, [or] (ii) for services rendered or to be rendered...." See also CAL. COM. CODE § 9102
(identical).

28    [3]    An "Account Debtor" is "a person obligated on an account . . . ." TEX. BUS. & COM. CODE
ANN. § 9.102(a)(3); see also CAL. COM. CODE §  9102(a)(3) (same).

1   equitable interests in the sold Accounts, including the exclusive right to receive payment from the

2   Account Debtor, vest with Sallyport.

3        12.    Between February 2015 to October 2016, Sallyport entered into a separate written

4   Account Sale and Purchase Agreement and Trade Financing Addendum with each of Yihe, Alaskan

5   Jack's, and Yihe Seafood (collectively, the "Financing Agreements"). Pursuant to the Financing

6   Agreements, each of Yihe, Alaskan Jack's, and Yihe Seafood granted to Sallyport a lien against all

7   of their assets to secure payment and performance of their obligations to Sallyport under the

8   Financing Agreements. Plaintiff's security interest was perfected by, among other things, a UCC-1

9   Financing Statement filed with the California Secretary of State, a UCC-1 Financing Statement filed

10   with the Office of the Alaska Department of Natural Resources, and a PPSA Security Agreement

11   registered with the Personal Property Registry of the Province of British Columbia.

12        13.    In order to induce Sallyport to enter into the Financing Agreements and make

13   advances thereunder, Chen executed continuing and irrevocable guarantees, between February 2015

14   to October 2016, pursuant to which he unconditionally guaranteed the payment and performance of

15   the obligations of Yihe, Alaskan Jack's, and Yihe Seafood to Plaintiff.[4]

16   **DEBTOR'S APPARENT FRAUD IN THE SALE OF ACCOUNTS TO SALLYPORT**

17        14.    Plaintiff is informed and believes and based thereon alleges that, at all times relevant

18   herein, Debtor is and/or was a member, managing member, manager, officer, director, and/or

19   employee of Yihe, Alaskan Jack's, and Yihe Seafood, and that Debtor controlled these entities'

20   business operations, records, and decisions.

21        15.    Plaintiff is also informed and believes, and based thereon alleges, that Rita Zhang,

22   also known as Rita Yang Zhang also known as Yang Rita Zhang ("Rita"), was the operations

23   manager for Yihe, Alaskan Jack's, and Yihe Seafood, and that, at all relevant times, Rita acted on

24   behalf of Yihe, Alaskan Jack's, and Yihe Seafood under Debtor's direction and control.

25        16.    In or about May to June 2018, Debtor caused both Yihe and Alaskan Jack's to sell

26

27

28   [4]    The guarantees each provide that the guarantor is obligated to pay all of Sallyport's
attorney's fees and costs arising out of or related to the guaranty. Plaintiff has employed
Levinson Arshonsky & Kurtz, LLP in connection with this matter.

LEVINSON ARSHONSKY & KURTZ, LLP

and assign to Plaintiff the Accounts, summarized in Table 1 and Table 2 below, arising from Yihe

and Alaskan Jack's apparent sale of frozen seafood products to Account Debtor, Shuangyi Int'l

Trading Co., Inc., a California corporation ("Shuangyi") (the "Subject Accounts"). Attached hereto

as **Exhibit "A"** are purchase orders, bills of lading, and invoices, dated from in or about May 31,

2018 to June 29, 2018, which Plaintiff received from Alaskan Jack's and Yihe in connection with the

Subject Accounts.

| Table 1: Alaskan Jack's Invoices to Shuangyi | | | |
|---|---|---|---|
| Invoice No. | Delivery Date | Invoice Date | Balance |
| -260 | May 31, 2018 | May 31, 2018 | $ 160,332.00 |
| -265 | June 12, 2018 | June 12, 2018 | $ 173,730.00 |
| -270 | June 15, 2018 | June 15, 2018 | $ 172,416.00 |
| -278 | June 28, 2018 | June 28, 2018 | $ 185,645.40 |
| | | SUB-TOTAL | $ 692,123.40 |

| Table 2: Yihe's Invoices to Shuangyi | | | |
|---|---|---|---|
| Invoice No. | Delivery Date | Invoice Date | Balance |
| -183 | June 4, 2018 | June 4, 2018 | $ 195,624.00 |
| -185 | June 6, 2018 | June 6, 2018 | $ 195,028.20 |
| -190 | June 26, 2018 | June 27, 2018 | $ 188,496.00 |
| -193 | June 29, 2018 | June 29, 2018 | $ 190,560.00 |
| | | SUB-TOTAL | $ 769,708.20 |

17.    At various times in 2017, and to induce Sallyport to advance funds under the

Financing Agreements in connection with the Subject Accounts, Yihe and Alaskan Jack's presented

to Sallyport proof of Euler Hermes credit insurance policies held by Yihe and Alaskan Jack's with

respect to their Accounts due from Shuangyi. The credit insurance policies, subject to their terms,

would insure against the risk of Shuangyi's failure to pay for the frozen seafood that Yihe and

Alaskan Jack's would sell to Shuangyi. In November 2017, Yihe, by and through Debtor and/or

Rita, presented to Sallyport a written confirmation indicating that Euler Hermes had agreed to insure

Accounts due from Shuangyi up to a credit limit of $1,000,000. A copy of the written credit limit

confirmation that Sallyport received from Yihe on or about November 15, 2017 is attached hereto as

**Exhibit "B"** and incorporated herein by this reference.  Similarly, in December 2017, Rita presented

to Sallyport a confirmation indicating that Alaskan Jack's held a Euler Hermes credit insurance

LEVINSON ARSHONSKY & KURTZ, LLP

policy with a credit insurance limit of $850,000.00 for Accounts due from Shuangyi. A copy of

Rita's email to Sallyport, by which she forwarded the credit limit confirmation, dated December 26,

2017, is attached hereto as **Exhibit "C"** and incorporated herein by this reference.

18.    In reliance on the written credit insurance confirmations and other documentation that

Debtor and Rita provided to Sallyport regarding the Subject Accounts, Sallyport advanced funds, at

Yihe and Alaskan Jack's request, to Premium Fish, Inc., a California corporation doing business as

Safexpress Logistics Services ("Premium Fish"), to pay Premium Fish to supply the seafood that

Shuangyi had ordered in connection with the Subject Accounts.

19.    After receiving the advance, Debtor or his agents, including Rita, presented to

Sallyport the invoices and bills of lading included in **Exhibit "A"** to this Complaint, with the intent

to evidence for Sallyport the delivery of the frozen seafood to Shuangyi in connection with the

Subject Accounts.

20.    On receipt of this proof, Sallyport also communicated with Shuangyi (i) to confirm

that Shuangyi had accepted the seafood products sold by Alaskan Jack's and Yihe and (ii) to confirm

that the amount, stated by Alaskan Jack's and Yihe as due for the seafood products, was correct. In

various communications between Sallyport and Shuangyi concerning the Subject Accounts,

Shuangyi confirmed its receipt and acceptance of the seafood products. By way of example, on June

20, 2018, Sallyport emailed Kris Z., an employee or officer of Shuangyi, requesting confirmation of

Shuangyi's receipt of the goods sold under Alaskan Jack's invoices -260 and -265 and Yihe invoices

-183 and -185. Kris Z. responded on June 20, 2018 by email, advising Sallyport, "Checked the

record, yes, we received both 4 orders already. Thank you!"  Similarly, on June 27, 2018, when

Sallyport inquired of Shuangyi to confirm that Shuangyi would be paying Yihe's invoice -183, Kris

Z. responded, "Yes. Adam [principal of Shuangyi] is working on the payment now." A sample of

these communications by which Shuangyi verified to Sallyport its acceptance of the goods sold

under the Subject Accounts is attached hereto collectively as **Exhibit "D"** and incorporated herein

by this reference.

21.    In February 2017 and October 2017, Sallyport had provided Shuangyi with a written

notice of the assignment of the Subject Accounts to Sallyport, directing Shuangyi to pay such

LEVINSON ARSHONSKY & KURTZ, LLP

1   Accounts directly to Sallyport. In its May and June 2018 communications with Shuangyi, Sallyport

2   again instructed Shuangyi to make payments directly to Sallyport on the Subject Accounts.

3          22.    Despite its confirmation of the receipt of the frozen seafood from Yihe and Alaskan

4   Jack's, Shuangyi failed to pay Sallyport, in full, for the Subject Accounts at issue here.[5]

5          23.    Following the payment default, Sallyport verified that Euler Hermes had, at one time,

6   issued credit insurance policies to Yihe and Alaskan Jack's but that the credit limits under those

7   policies as to Shuangyi were never higher than $400,000.00. Plaintiff is informed and believes, and

8   on that basis alleges, that the written confirmations of credit limits in the range of $850,000.00 and

9   $1,000,000.00 that Debtor and/or Rita, acting at Debtor's direction, caused to be presented to

10  Sallyport in November and December 2017 regarding Shuangyi were materially false.[6]

11         24.    Then, in or about September 2018, Shuangyi purported to return the frozen seafood

12  sold by Yihe and Alaskan Jack's to Premium Fish, disputing the quality of the frozen seafood.  By

13  email correspondence, dated September 4, 2018, Kris Zhou of Shuangyi notified Sallyport that

14  Shuangyi was returning 30,457 cases of frozen seafood. Based on the returns, Shuangyi demanded

15  an approximate $1.4 million offset against the amounts due under the Subject Accounts that

16  Sallyport had purchased.  Sallyport objected to the return. A true and correct copy of Kris Zhou's

17  September 4, 2018 email is attached hereto as **Exhibit "E"** and incorporated herein by this

18  reference.

19         25.    After further investigation, Sallyport discovered that Debtor served as the Chief

20  Executive Officer and Director of a California corporation, called Global Fishery Corporation

---

22  [5]    In April 2019, Sallyport obtained a default judgment against Shuangyi for balances due
23         unpaid Subject Accounts in *Sallyport Commercial Finance, LLC v. Shuangyi Int'l Trading Co., Inc.* (U.S.D.C. Central District of California, Case No. 2:18-cv-09007).

24  [6]    In or about June 2018, Debtor and/or Rita, acting at Debtor's direction, caused a purported
25         Euler Hermes credit limit confirmation of $250,000.00 for Account Debtor, Jingyin North America Enterprise, Ltd., to be presented in writing to Sallyport to induce Sallyport
26         to advance funds in purchase of Accounts due from the Account Debtor. Plaintiff is informed and believes, and on that basis alleges, that the written confirmation of credit limit in the
27         range of $250,000.00 was overstated and false. On recent further investigation, Sallyport was able to confirm that this Account Debtor received only a temporary credit limit approval of no more than $35,000.00 under a Euler Hermes policy held by Yihe and that Euler Hermes
28         had entirely withdrawn such credit limit and disapproved coverage for this Account Debtor months before Debtor and/or Rita, acting at Debtor's direction, caused the purported $250,000.00 credit limit confirmation to be presented to Sallyport.

LEVINSON ARSHONSKY & KURTZ, LLP

("Global Fishery"), and that, like Yihe and Alaskan Jack's, Global Fishery supplied seafood to its customers on a wholesale basis. Plaintiff further learned that Global Fishery was organized in California as early as October 2014 and that Global Fishery was supplying seafood to Shuangyi during the same time that Yihe and Alaskan Jack's were supplying frozen seafood to Shuangyi. Debtor failed to disclose to Sallyport that he was simultaneously supplying Shuangyi or any other Account Debtor through each of Yihe, Alaskan Jack's, and Global Fishery. Plaintiff is informed and believes, and on that basis alleges that, Debtor, as a controlling officer, manager or principal of Global Fishery, was in a position to improperly authorize Shuangyi to offset against the Subject Accounts due Sallyport, including, but not limited to, by the return to Alaskan Jack's or Yihe of frozen seafood products sold to Shuangyi by Global Fishery, and Plaintiff's investigation in this regard is ongoing.

## DEBTOR'S WRONGFUL DIVERSION OF
## COLLECTIONS ON ACCOUNTS

26.     Under the terms of the Financing Agreements, Sallyport had the sole right to collect the Accounts generated by Debtor's businesses, Yihe, Alaskan Jack's, and Yihe Seafood. In connection with its funding of the purchase order and factoring facilities, Sallyport notified the Account Debtors of Yihe, Alaskan Jack's, and Yihe Seafood to pay all amounts due on the Accounts to Sallyport.

27.     On August 30, 2018, Michael Tam, purporting to act on behalf of Yihe and at Debtor's direction, emailed Yihe's Account Debtor, Perishable Distributors of Iowa, Ltd., an Iowa company ("PDI"), under the account, mtam@yihecorp.com, copying Debtor, to improperly instruct PDI to change the remittance address for payments on Yihe's Accounts from Sallyport's payment address to the address which Debtor has listed as its principal residence in his bankruptcy schedules in the present Chapter 7 case. Mr. Tam's email provided,

> "Our payment remit to have made some changes [*sic*] and my accounting
> want me to contact you and PDI to help us confirm the changes. Please
> send any pending payment to below address starting today and for any
> outstanding orders. YIHE CORPORATION, 15447 TETLEY ST.,

LEVINSON ARSHONSKY & KURTZ, LLP

1    HACIDENA [*sic*] HEIGHTS CA 91745 Please confirm if this has

2    updated. Thank you very much."

3    Attached hereto as **Exhibit "F"** and incorporated herein by this reference is a true and correct copy

4    of the Mr. Tam's email to PDI.

5    28.    As a result of these improper payment instructions, in or about September 2018 and

6    October 2018, Debtor and or his businesses received and negotiated checks from PDI on Accounts

7    due to be paid to Sallyport under the Financing Agreements. Debtor failed to cause the proceeds of

8    those checks to be remitted to Sallyport. Attached hereto collectively as **Exhibit "G"** and

9    incorporated herein by this reference are true and correct copies of the checks issued by PDI and

10    diverted by Yihe.

11    29.    Plaintiff is informed and believes, and based thereon alleges that, Debtor has similarly

12    caused Yihe, Alaskan Jack's, and/or Yihe Seafood to improperly instruct Account Debtor, Weis

13    Markets, Inc., a Pennsylvania corporation, to remit payments, otherwise due to Sallyport on the

14    Accounts of Yihe, Alaskan Jack's, and/or Yihe Seafood, to an address controlled by Debtor and that

15    Debtor has converted such payments and has failed to remit them to Sallyport.

16    **DEBTOR'S MISREPRESENTATIONS REGARDING HIS CONTROL OVER PREMIUM**

17    **FISH AND PREMIUM FISH'S SIPHONING OF FUNDS FROM YIHE, ALASKAN JACK'S,**

18    **AND YIHE SEAFOOD**

19    30.    As discussed *supra*, Premium Fish supplied frozen seafood inventory to Yihe,

20    Alaskan Jack's, and Yihe Seafood.

21    31.    Under the Financing Agreements, Sallyport was the exclusive factor for Yihe,

22    Alaskan Jack's, and Yihe Seafood, supplying both the purchase order financing and factoring facility

23    for the Accounts arising from their sale of frozen seafood. At various points, Yihe, Alaskan Jack's,

24    and Yihe Seafood directed Plaintiff to advance funds under the facilities directly to Premium Fish

25    for Premium Fish's supply of frozen seafood inventory to Yihe, Alaskan Jack's, and Yihe Seafood.

26    32.    Plaintiff is also informed and believes, and based thereon alleges, that Premium Fish

27    also enjoyed a licensing agreement with both Alaskan Jack's and Yihe by which it could source,

28    market, and distribute frozen seafood inventory sold under the trademarks referenced above. Under

LEVINSON ARSHONSKY & KURTZ, LLP

10

the licensing agreements, Premium Fish was obligated to pay Alaskan Jack's and Yihe a 3% royalty

on Premium's sales of the frozen seafood products under the trademarks. Attached hereto as

**Exhibits "H" and "I"** are true and correct copies of alleged trademark licensing agreements that

Plaintiff received from Alaskan Jack's and Yihe.

33.    Because Sallyport was advancing purchase order financing to pay for the seafood that

Premium Fish supplied to Yihe and Alaskan Jack's, the balance of any account between Yihe and

Alaskan Jack's and Premium Fish should have stood in Yihe's and Alaskan Jack's favor, with

Premium Fish owing money to Yihe and Alaskan Jack's for royalties due under the trademark

licensing agreements.

34.    Nevertheless, from in or about January 2018 to June 2018, Premium Fish received

numerous six-figure wires/withdrawals from Yihe's checking account, including the following: (i)

$33,000.00 from Yihe's checking account on January 29, 2018, (ii) $31,500.00 from Yihe's

checking account on March 23, 2018, (iii) $28,900.00 from Yihe's checking account on April 5,

2018, (iv) $14,000.00 from Yihe's checking account on April 11, 2018, (v) $29,000.00 from Yihe's

checking account on April 16, 2018, (vi) $12,500.00 from Yihe's checking account on April 18,

2018, (vii) $18,000.00 from Yihe's checking account on May 2, 2018, (viii) $33,500.00 from Yihe's

checking account on May 11, 2018, (ix) $30,500.00 from Yihe's checking account on May 15, 2018,

(x) $23,000.00 from Yihe's checking account on June 1, 2018, and (xi) $25,000.00 on June 6, 2018.

35.    During this same time, Sallyport was both (i) advancing funds directly to Premium

Fish, at Yihe's direction, for Premium Fish's supply of the frozen seafood to Yihe and (ii) Sallyport

was advancing funds to Yihe in purchase of Accounts arising from the sale of that frozen seafood to

the Account Debtors under Yihe's Accounts. In hindsight, it now appears that Debtor and his agents

behind Premium Fish were also controlling the affairs of Yihe to the benefit of Premium Fish and to

the detriment of Yihe and its creditors. Premium Fish was (i) receiving Sallyport's initial advance for

payment of the frozen seafood inventory and (ii) then siphoning from Yihe's checking account the

additional advance that Sallyport had deposited to Yihe's checking account. As a result of Premium

Fish's actions, it left Sallyport's debtor, Yihe , as a depleted shell unable to meet its obligations to its

creditors.

LEVINSON ARSHONSKY & KURTZ, LLP

36.     In fact, when examining the bank account records of Yihe, Alaskan Jack's, and Yihe Seafood in 2018, patterns emerge of substantial wires from each of Yihe, Alaskan Jack's, and Yihe Seafood's bank accounts to Premium Fish. The wires to Premium Fish often occurred shortly after the deposits of Sallyport's advances to Alaskan Jack's and Yihe's checking accounts. The wire amounts far exceed any residual amounts that might have been remained due Premium Fish, after Sallyport's advances to Premium Fish, for its supply of frozen seafood to Yihe, Alaskan Jack's, or Yihe Seafood.

37.     On or about November 1, 2016, Sallyport's representatives questioned Chen about the relationship between his businesses, Yihe Alaskan Jack's, Yihe Seafood, and Premium Fish. In the conversation, Sallyport's representatives brought to Chen's attention that Rita used a personal cell phone number that was also published as Premium Fish's business telephone number. During the meeting, Chen and Rita told Sallyport that Rita had helped Premium Fish set up its business, but that Rita and Chen were not otherwise involved with Premium Fish.

38.     On or about June 27, 2018, Chen and Rita visited Sallyport's California office and, when questioned again about the relationships between Yihe, Alaskan Jack's, Yihe Seafood, and Premium Fish, Chen and Rita stressed there was nothing other than an arms-length relationship between the Premium Fish and Yihe, Alaskan Jack's, and Yihe Seafood.

39.     Chen again affirmed no relationship with Premium Fish in conversations with Emma Hart of Sallyport on or about July 7, 2018 and September 4, 2018.

40.     Plaintiff is informed and believes, and based thereon alleges that, in reality, Debtor, directly and through Rita, as his agent, was actively managing Premium Fish's operations during the time period that Chen and Rita represented to Sallyport that Yihe, Yihe Seafood, Alaskan Jack's and Premium Fish were independent entities engaged in arms-length transactions.

41.     Plaintiff is informed and believes, and based thereon alleges, that, despite his representations to the contrary to Sallyport, at all times herein mentioned, Debtor is and/or was a member, managing member, manager, officer, director, and/or employee of Premium Fish, and that Debtor controlled these entities' business operations, records, and decisions, directly and by and through Rita, as his agent.

12

42.     In March 2019, in the litigation, *Creditors Adjustment Bureau, Inc. v. Premium Fish, Inc.* (Los Angeles County Superior Court Case No, LC107559), the plaintiff-creditor filed with the state superior court revealing various agreements and emails, dated from about March to May 2017, in which Rita is listed as a contact person for Premium Fish and in which she is found corresponding with the plaintiff-creditor solely on behalf of Premium Fish.

43.     Plaintiff is further informed and believes, and based thereon alleges, (i) that Rita's mother, Arlene Balducki, is the CEO of Premium Fish, and (ii) that, in 2013, Debtor's spouse, Yiqun Ren, served as the agent for service of process for Premium Fish. Neither relationship was disclosed to Sallyport by either Debtor or Rita.

44.     Plaintiff is further informed and believes, and based thereon alleges, that at all times herein mentioned, while Chen falsely assured Sallyport that no familial relationship or common management existed between Yihe, Alaskan Jack's, and Premium Fish, Chen nevertheless employed his dual authority over Sallyport's debtors and Premium Fish to divert funds from Yihe, Alaskan Jack's, and Yihe Seafood to and for the benefit of Premium Fish and its employees and principals, to the detriment of Sallyport and the other creditors of Yihe, Alaskan Jack's, and Yihe Seafood. By his representations and omissions to Sallyport regarding Yihe, Alaskan Jack's, and Yihe Seafood's relationships with Premium Fish, Chen fraudulently induced Plaintiff to initially finance and then to continue financing Yihe, Alaskan Jack's and Yihe Seafood, causing Sallyport monetary losses.

45.     As of June 20, 2019, Sallyport has incurred losses of, at least, $1,562,191.97, plus additional attorneys' fees, costs, and other charges, in connection with the conduct complained of in this Complaint.

## CHEN'S MATERIAL OMISSIONS
## FROM HIS BANKRUPTCY SCHEDULES

46.     Debtor's Voluntary Petition initiating the Chapter 7 bankruptcy case [Doc 1] was an individual petition and did not identify a joint debtor.

47.     With the Voluntary Petition, Debtor signed a Declaration, under penalty of perjury, declaring that the information provided in the Petition was true and correct.

48.     Debtor filed his Bankruptcy Schedules and Statement of Financial Affairs with the

LEVINSON ARSHONSKY & KURTZ, LLP

13

Voluntary Petition [Doc 1] on the Petition Date.

49.    With the Bankruptcy Schedules, Debtor signed a Declaration concerning his schedules, under penalty of perjury, declaring that all of the information in the summary and schedules were true and correct.

50.    At Item 19 in Debtor's Schedule A/B (Property), Debtor reported that he owned 25% of Yihe Corporation, a California corporation. Debtor failed to disclose in his Schedule A/B or in is Statement of Financial Affairs any other non-publicly traded stock or interests in incorporated or unincorporated businesses.

51.    In connection with the above-referenced financing facility and to induce Sallyport to advance funds thereunder, Chen represented to Sallyport that, in or about April 2014, Chen received from Ren Dunxu and Zhao Qing a transfer of 5,000 total shares in Ocean Eclipse Industry Limited, a British Virgin Islands company ("Ocean Eclipse BVI"). To evidence the transfer of shares, Chen provided to Sallyport the Instruments of Transfer attached hereto as **Exhibit "J."**  Chen further represented himself to Sallyport as director of Ocean Eclipse BVI, presenting to Sallyport the resolutions of Ocean Eclipse BVI, attached hereto as **Exhibit "K,"** by which Chen was appointed as director of Ocean Eclipse BVI.

52.    In his current bankruptcy schedules and Statement of Financial Affairs, Chen fails to disclose his interest in Ocean Eclipse BVI, his role as director of Ocean Eclipse BVI, or any income that he is earning from the business.

53.    In connection with the above-referenced financing facility and to induce Sallyport to advance funds thereunder, Chen, acting as purported president of Qingdao Hairong Foodstuff Co., Ltd. ("Qingdao Hairong Foodstuff"), executed a guarantee of the obligations of Yihe Corporation to Sallyport. Plaintiff is informed and believes, and based thereon alleges, that Qingdao Hairong Foodstuff is, and at all relevant times hereto was, a Chinese company with its principal place of business in California. Plaintiff is informed and believes, and based thereon alleges, that at all relevant times hereto, Chen has served as Qingdao Hairong Foodstuff's president.

54.    In his current bankruptcy schedules and Statement of Financial Affairs, Chen fails to disclose his employment as President of Qingdao Hairong Foodstuff or any income that he is earning

LEVINSON ARSHONSKY & KURTZ, LLP

14

1   from the business or any related entities. At the initial meeting of creditors in the underlying Chapter

2   7 bankruptcy, Chen indicated that Qingdao Hairong Foodstuff, along with another Chinese entity

3   over which Chen apparently exercised some control, Qingdao Hairong Import & Export Co., Ltd.,

4   had stopped operating as of 2013; Plaintiff's investigation of the status of these entities is ongoing.

5         55.     In Part 1 of Debtor's Schedule I (Your Income), Debtor reported that he was

6   unemployed and that he, personally, had no monthly wages, salary, or commissions. At the same

7   time, Debtor reports that his non-filing spouse, Yiqun Ren, was employed as the manager of "Alaska

8   Jack Seafood," earning gross wages, salary or commissions of $6,250.00 monthly, and that Debtor

9   expected an increase in her income, indicating "[h]opefully a raise this year."

10         56.     Plaintiff is informed and believes, and based thereon alleges, that the "Alaska Jack

11   Seafood" referenced in the Schedule I is Alaskan Jack's Seafood Corporation, an Alaskan

12   corporation ("Alaskan Jack's") with its principal place of business in the City of Industry, Los

13   Angeles County, California. In connection with the above-referenced financing facility and to induce

14   Sallyport to advance funds thereunder, Chen represented to Sallyport, in or about May 2016 and

15   thereafter, that he held a power of attorney as "General Manager" to run Alaskan Jack's Seafood

16   Corporation on behalf of its president, Labana Li. In support of this representation, Chen provided to

17   Sallyport, in or about May 2016, the Power of Attorney attached hereto as **Exhibit "L,"** by which

18   Chen is appointed as manager over Alaskan Jack's operations. Since the occurrence of the defaults

19   under the Financing Facility, Chen has represented to Sallyport that Alaskan Jack's has closed its

20   doors. However, Debtor indicates in his Schedule I that Alaskan Jack's is still operating and that his

21   wife is receiving income from the business with the expectation of a raise. To the extent Alaskan

22   Jack's continues to operate, generating Accounts, those Accounts remain subject to Sallyport's

23   security interest and are properly payable only to Sallyport; however, Sallyport is not receiving such

24   collections, and Debtor is improperly diverting collections on the Accounts.

25         57.     In his current bankruptcy schedules and Statement of Financial Affairs, Chen fails to

26   disclose either his employment as manager of Alaskan Jack's or any income that he is earning from

27   the business.

28         58.     As alleged *supra*, Plaintiff is informed and believes, and based thereon alleges, that,

LEVINSON ARSHONSKY & KURTZ, LLP

15

1  at all times herein mentioned, Chen served as officer, general manager, or authorized agent on behalf

2  of Global Fishery.

3      59.    In his current bankruptcy schedules and Statement of Financial Affairs, Chen fails to

4  disclose either his employment or his wife's employment with Global Fishery, and he fails to

5  disclose any income that he or his wife is earning from the business. Chen acknowledged at his

6  initial meeting of creditors in the underlying bankruptcy case that he is currently employed with

7  Global Fishery. However, Chen has not disclosed that income in his bankruptcy schedules.

8      60.    As alleged *supra*, Plaintiff is informed and believes, and based thereon alleges, that,

9  at all times herein mentioned, Chen served as officer, general manager, or authorized agent on behalf

10  of Premium Fish, in control of, among other things, Premium Fish's bank accounts.

11      61.    Plaintiff is further informed and believes, and based thereon alleges, that, at all times

12  herein mentioned, Debtor's non-filing spouse, Yiqun Ren, has been an officer, manager, employee,

13  or authorized agent of Premium Fish.

14      62.    In his current bankruptcy schedules and Statement of Financial Affairs, Chen fails to

15  disclose either his employment or his wife's employment with Premium Fish, and he fails to disclose

16  any income that he or his wife is earning from the business.

17      63.    Plaintiff's investigation is continuing, and other omissions from the bankruptcy

18  schedules and concealment of business interests and assets, along with further evidence of Debtor's

19  failure to maintain records regarding his business transactions, will likely be revealed through

20  discovery in this matter.

21  ### FIRST CLAIM FOR RELIEF

22  **(For Denial of Discharge for Knowingly and Fraudulently Making a**

23  **False Oath of Account Pursuant to 11 U.S.C. §727(a)(4))**

24      64.    Plaintiff realleges and incorporates paragraphs 1 through 63, *supra* as though fully set

25  forth herein.

26      65.    Pursuant to Bankruptcy Code §727(a)(4), a debtor's discharge may be denied where

27  "the debtor knowingly and fraudulently, in or in connection with the case—(A) made a false oath or

28  account...."

LEVINSON ARSHONSKY & KURTZ, LLP

66.     Plaintiff is informed and believes and thereon alleges that Debtor knowingly, fraudulently, and repeatedly made false oaths or accounts in his bankruptcy proceedings regarding his business interests and current income.  Specifically, Debtor represented in his Voluntary Petition and Schedules that he was unemployed and lacked income, individually.

67.     Debtor's representations to Sallyport in connection with the financing facility issued by Sallyport to Alaskan Jack's, Yihe, and Yihe Seafood confirm that Debtor has been (i) a shareholder and president of Yihe Corporation, a California corporation ("Yihe"), (ii) the General Manager of Alaskan Jack's Seafood Corporation, an Alaskan corporation ("Alaskan Jack's"),  (iii) the president of Yihe Seafood Corporation, a British Columbian company ("Yihe Seafood"), (iv) shareholder and director of Ocean Eclipse Industry Limited, a British Virgin Islands company, and (vi) president of Qingdao Hairong Foodstuff Co., Ltd., a Chinese company. Of these entities, only Yihe Corporation was disclosed in Debtor's bankruptcy schedules.

68.     Plaintiff is further informed and believes, and based thereon alleges, that, at all times herein mentioned, Chen served as officer, general manager, or authorized agent on behalf of Global Fishery and Premium Fish, in control of, among other things, Global Fishery's business operations and Premium Fish's bank accounts. As alleged *supra*, Plaintiff is further informed and believes, and based thereon alleges, that, at all times herein mentioned, Debtor's spouse, Yquen Ren, has served as an officer, manager, employee, or authorized agent of Premium Fish.

69.     In his current bankruptcy schedules and Statement of Financial Affairs, Chen fails to disclose his interest in Global Fishery or either his employment or his wife's employment with Premium Fish, and he fails to disclose any income that he or his wife is earning from these businesses.

70.     Plaintiff is informed and believes that Debtor failed to list his income derived from these entities and his interests in these entities, which interest and income Plaintiff is in the midst of investigating.

71.     By his acts described herein, the Debtor swore to a false oath or account within the meaning of 11 U.S.C. §727(a)(4).  Accordingly, Debtor's discharge should be denied.

///

LEVINSON ARSHONSKY & KURTZ, LLP

17

**SECOND CLAIM FOR RELIEF**

**(For Denial of Discharge for Concealment of Estate**

**Property Pursuant to 11 U.S.C.  §727(a)(2))**

72.    Plaintiff realleges and incorporates paragraphs 1 through 72, *supra* as though fully set forth herein.

73.    Pursuant to Bankruptcy Code §727(a)(2), a debtor's discharge may be denied where "the debtor, with the intent to hinder, delay or defraud a creditor or officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated or concealed, or has permitted to be transferred, removed, destroyed, mutilated or concealed - (A) property of the debtor, within one year before the date of the filing of the petition; or (B) property of the estate, after the date of the filing of the petition."

74.    Plaintiff is further informed and believes and based thereon alleges that Debtor, with the intent to hinder, delay or defraud a creditor or officer of the estate, has or has permitted to be concealed property of the estate by, among other things, (i) knowingly, fraudulently declaring in his bankruptcy schedules that he is unemployed and failing to disclose his interest in entities, such as Premium Fish, thereby concealing income or other assets to which the estate is entitled and (ii) causing the assets of his declared business, Yihe, among others, to be transferred to other businesses which he has concealed, including but not limited to Premium Fish,  thereby concealing income or other assets to which the estate is entitled.

75.    By his acts described herein, the Debtor, with intent to hinder, delay or defraud a creditor or an officer of the estate, has transferred, removed, destroyed, or concealed, or has permitted to be transferred, removed, destroyed, or concealed property of the debtor, within one year before the date of the filing of the petition, within the meaning of 11 U.S.C. §727(a)(2). Accordingly, Debtor's discharge should be denied.

**THIRD CLAIM FOR RELIEF**

**(For Denial of Discharge for Concealment, Destruction, or Failure to Preserve**

**the Debtor's Books and Records Pursuant to 11 U.S.C.  §727(a)(3))**

76.    Plaintiff realleges and incorporates paragraphs 1 through 75, *supra* as though fully set

LEVINSON ARSHONSKY & KURTZ, LLP

LEVINSON ARSHONSKY & KURTZ, LLP

1   forth herein.

2       77.    Pursuant to Bankruptcy Code §727(a)(3), a debtor's discharge may be denied where

3   "the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded

4   information, including books, documents, records, and papers, from which the debtor's financial

5   condition or business transactions might be ascertained, unless such act or failure to act was justified

6   under all of the circumstances of the case."

7       78.    Plaintiff is informed and believes and based thereon alleges that Debtor is the alter

8   ego of Alaskan Jack's, Yihe, Yihe Seafood, Global Fishery, and Premium Fish in that Debtor

9   dominated the affairs of these entities, there existed a unity of interest and ownership existed

10  between Debtor and these entities, these entities were mere shells and naked frameworks for Debtor

11  and his manipulations, Debtor diverted these entities' income and/or other assets for his own use,

12  Debtor failed to adequately capitalize these entities, Debtor failed to abide by the corporate

13  formalities for these entities, and the adherence to the fiction of a separate corporate existence

14  would, under the circumstances, promote injustice and would serve to avoid its/their obligations to

15  Plaintiff.

16      79.    Plaintiff is informed and believes and based thereon alleges that Debtor, without

17  justification, has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded

18  information, including books, documents, records, and papers, from which the debtor's financial

19  condition or business transactions might be ascertained.

20      80.    Among other things, Debtor, without substantial justification, has concealed,

21  destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including

22  books, documents, records, and papers regarding his true interests in property/assets of Global

23  Fishery and/or Premium Fish.

24      81.    Plaintiff is further informed and believes, and based thereon alleges, that Debtor,

25  without substantial justification, has concealed, destroyed, mutilated, falsified, or failed to keep or

26  preserve any recorded information, including books, documents, records, and papers of Alaskan

27  Jack's, Yihe, Yihe Seafood, Global Fishery, or Premium Fish, and any interests in real property,

28  personal property, inventory, equipment, and other interests held by them to which the bankruptcy

1    estate may have an interest.

2        82.    Plaintiff is further informed and believes, and based thereon alleges, that Debtor,

3    without substantial justification, has concealed, destroyed, mutilated, falsified, or failed to keep or

4    preserve recorded information, including books, documents, records, and papers relate to the nearly

5    $99 million in unsecured obligations alleged in his bankruptcy schedules or regarding the business

6    transactions and assets which supported the issuance of such an enormous amount of credit to

7    Debtor.

8        83.    By his acts described herein, the Debtor has failed, without substantial justification, to

9    keep or preserve recorded information, including books, records, and papers, from which Debtor's

10   financial condition or business transactions might be ascertained, within the meaning of 11 U.S.C.

11   §727(a)(3).  Accordingly, Debtor's discharge should be denied.

12                    **FOURTH CLAIM FOR RELIEF**

13        **(For Denial of Discharge for Failure to Sufficiently Explain Loss or**

14            **Deficiency of Assets Pursuant to 11 U.S.C.  §727(a)(5))**

15       84.    Plaintiff realleges and incorporates paragraphs 1 through 83, *supra* as though fully set

16   forth herein.

17       85.     Pursuant to Bankruptcy Code §727(a)(5), a debtor's discharge may be denied where

18   "the debtor has failed to explain satisfactorily, before determination of denial of discharge under this

19   paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities."

20       86.    Plaintiff is informed and believes and based thereon alleges that Debtor controlled

21   Alaskan Jack's, Yihe, Yihe Seafood, Global Fishery, and Premium Fish and/or other entities,

22   including but not limited to their business operations, records, and assets, and has a pecuniary

23   interest in those entities' assets.

24       87.    Plaintiff is informed and believes and based thereon alleges that Debtor has failed to

25   satisfactorily explain the loss of Alaskan Jack's, Yihe, Yihe Seafood, Global Fishery, or Premium

26   Fish assets, in which he had a pecuniary interest, including their inventory, equipment and accounts

27   receivable and deficiency of assets to meet his liabilities.

28       88.    By his acts described herein, the Debtor has failed to satisfactorily explain any loss of

LEVINSON ARSHONSKY & KURTZ, LLP

2353-037/844299_4

1   assets or deficiency of assets to meet Debtor's liabilities, within the meaning of 11 U.S.C.

2   §727(a)(5).  Accordingly, Debtor's discharge should be denied.

3   **FIFTH CLAIM FOR RELIEF**

4   **(For Determination of Dischargeability of Debt Pursuant to 11 U.S.C. §523(a)(2)(B))**

5   89.   Plaintiff realleges and incorporates paragraphs 1 through 88 *supra* as though fully set

6   forth herein.

7   90.   Pursuant to Section 523(a)(2)(B), a debt is excepted from discharge if it is "for

8   money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained

9   by - (B) use of a statement in writing—(i) that is materially false; (ii) respecting the debtor's or an

10   insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money,

11   property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or

12   published with intent to deceive."

13   91.   Plaintiff is informed and believes and based thereon alleges that from, at least,

14   approximately January 2018 to June 2018, Debtor obtained money and/or received continued

15   financing on behalf of Alaskan Jack's and Yihe from Plaintiff by, among other things, presenting

16   material false statements in writing regarding Debtor's, Alaskan Jack's, and Yihe's financial

17   condition, including but not limited to false financial statements, communications, credit insurance

18   confirmations.

19   92.   From November 2016 through, at least, June 2018 and the months following, with

20   respect to funding requests made by Debtor to Plaintiff, Debtor continuously, periodically, and

21   falsely reported and represented to Plaintiff that Alaskan Jack's, Yihe, and Premium Fish were

22   completely separate entities involving separate assets, collaterals, Accounts, financial dealings, and

23   transactions and that there were no setoffs being made on any of their Accounts with respect to each

24   of the entities and with Account Debtors.

25   93.   Specifically, Plaintiff is informed and believes, and based thereon alleges, that Debtor

26   presented Plaintiff with purchase orders, bills of lading, and invoices for the Subject Accounts, for

27   funding, on behalf of both Alaskan Jack's and Yihe, which were not eligible for funding and which

28   Debtor knew were not eligible for funding at the time Debtor presented them because, among other

LEVINSON ARSHONSKY & KURTZ, LLP

1   things, they did not enjoy the credit insurance coverage up to the limits as represented by Debtor and

2   or his agents and/or Debtor knew that Shuangyi would not pay the invoices in the amounts as stated

3   on the invoices due, among other reasons, to quality issues with the fish supplied and/or offsets that

4   Debtor had or would improperly authorize to Shuangyi to take as a result of the dealings between his

5   other company, Global Fishery and Shuangyi.

6       94.   The aforementioned representations by Debtor were materially false and were

7   knowingly and fraudulently made and/or the truth was concealed.

8       95.   The misrepresentations were made at a time when Debtor knew or should have

9   known them to be false and were made with the intent to deceive Plaintiff and to cause Plaintiff to

10  incur damages.

11      96.   The misrepresentations did actually deceive Plaintiff and induced Plaintiff to advance

12  money and/or continue to advance money to Alaskan Jack's and Yihe which thereby caused Plaintiff

13  to suffer a financial loss.

14      97.   Plaintiff relief upon the misrepresentations and said reliance was actual and justifiable

15  under the circumstances.  The falsity of the misrepresentations was not and could not have been

16  readily apparent to Plaintiff.

17      98.   But for the Debtor's misrepresentations, Plaintiff would not have advanced the

18  requested funds against the Subject Accounts, among others, and therefore would have avoided the

19  financial loss.

20      99.   As a proximate result of Debtor's conduct, Plaintiff has suffered damages in an

21  amount to be determined at trial.

22      100.  Accordingly, the debt owed by Debtor to Plaintiff, including but not limited to

23  pursuant to his guarantee described *supra*, is nondischargeable pursuant to 11 U.S.C. §§523(a)(2)(B)

24  and 523(c)(1).

## SIXTH CLAIM FOR RELIEF

### (For Determination of Dischargeability of Debt Pursuant to 11 U.S.C. §523(a)(2)(A))

27      101.  Plaintiff realleges and incorporates paragraphs 1 through 100, *supra* as though fully

28  set forth herein.

LEVINSON ARSHONSKY & KURTZ, LLP

2353-037/844299_4

1    102.    Pursuant to Bankruptcy Code §523(a)(2)(A), a debt is excepted from discharge if it is

2    "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent

3    obtained by - (A) false pretenses, false representations, or actual fraud, other than a statement

4    respecting the debtor's or an insider's financial condition ..."

5    103.    To the extent that the statements concerning the ineligible invoices are not considered

6    statements concerning the Debtor's or an insider's financial condition, Plaintiff alternatively alleges

7    that Debtor through false pretenses, false representations and pursuant to actual fraud, obtained

8    money and/or received continued financing on behalf of Alaskan Jack's, and Yihe from Plaintiff by,

9    among other things, presenting ineligible Accounts and/or fraudulent statements, including but not

10   limited to false credit insurance confirmations with respect to the Accounts of Debtor's businesses,

11   in order to obtain money and/or an extension, renewal or refinancing of credit from Plaintiff.

12   104.    Further, from November 2016 through, at least, June 2018 and the months following,

13   with respect to funding requests made by Debtor to Plaintiff, Debtor continuously, periodically, and

14   falsely reported and represented to Plaintiff that Alaskan Jack's, Yihe, and Premium Fish were

15   completely separate entities involving separate assets, collaterals, Accounts, financial dealings, and

16   transactions and that there were no setoffs being made on any of their Accounts with respect to each

17   of the entities and with Account Debtors. In doing so, Debtor, repeatedly and continuously,

18   represented to Plaintiff that Debtor and its entities had sufficient personal property (including but not

19   limited to accounts receivable, inventory, and equipment) to serve as Plaintiff's secured collateral

20   when Debtor knew that said personal property collateral (including the cash of Alaskan Jack's and

21   Yihe) had and was being dissipated by Premium Fish.

22   105.    The representations by Debtor were materially false and were knowingly and

23   fraudulently made and/or the truth was concealed.

24   106.    The misrepresentations were made at a time when Debtor knew or should have

25   known them to be false and were made with the intent to deceive Plaintiff and to cause Plaintiff to

26   incur damages.

27   107.    The misrepresentations did actually deceive Plaintiff and induced Plaintiff to advance

28   money and/or continue to advance funds to Yihe, Alaskan Jack's, and Yihe Seafood, which thereby

LEVINSON ARSHONSKY & KURTZ, LLP

23

1   caused Plaintiff to suffer a financial loss.

2       108.   Plaintiff relief upon the misrepresentation and said reliance was actual and justifiable

3   under the circumstances.  The falsity of the misrepresentations was not and could not have been

4   readily apparent to Plaintiff.

5       109.   But for the Debtor's misrepresentations, Plaintiff would not have continued to make

6   advances to Alaskan Jack's, Yihe, and Yihe Seafood, and therefore would have avoided the financial

7   loss.

8       110.   As a proximate result of Debtor's conduct, Plaintiff has suffered damages in an

9   amount to be determined at trial.

10       111.   Accordingly, the debt owed by Debtor to Plaintiff, including but not limited to

11   pursuant to his guarantee described *supra*, is nondischargeable pursuant to 11 U.S.C. §§523(a)(2)(A)

12   and 523(c)(1).

13   **SEVENTH CLAIM FOR RELIEF**

14   **(For Determination of Dischargeability of Debt Pursuant to 11 U.S.C. §523(a)(4))**

15       112.   Plaintiff realleges and incorporates paragraphs 1 through 111, *supra* as though fully

16   set forth herein.

17       113.   Pursuant to Bankruptcy Code § 523(a)(4) a debt is excepted from discharge on the

18   basis of Debtor's "embezzlement or larceny."

19       114.   Plaintiff is informed and believes and based thereon alleges that Debtor has

20   wrongfully obtained and deposited payments on Accounts which were assigned for payment to

21   Plaintiff and used said payments for Debtor's own use and benefit including for use in Debtor's

22   other entities and financial dealings, including Premium Fish.  Said payments should have been held

23   in trust for Sallyport and for its express benefit or should have been turned over and paid to

24   Sallyport.

25       115.   In or about September 2018 and October 2018, Chen, Yihe, and/or Premium Fish

26   received and negotiated checks from PDI on Accounts due to be paid to Sallyport under the Yihe

27   ASPA. Yihe failed to remit the proceeds of those checks to Sallyport.

28       116.   Plaintiff is informed and believes and based thereon alleges that Debtor has

LEVINSON ARSHONSKY & KURTZ, LLP

1  wrongfully obtained other collateral (including but not limited to equipment and inventory and

2  payments from Weis Markets, Inc., a Pennsylvania corporation) and used, for his own use and

3  benefit and/or for the benefit of Debtor's other entities, including but not limited to Global Fishery

4  and Premium Fish, which Debtor should have been turned over to Plaintiff.

5       117.   Moreover, Plaintiff is informed and believes and based thereon alleges that Debtor

6  controlled the business dealings, assets, and records of Yihe, Alaskan Jack's, and Premium Fish and

7  as a result used and/or transferred those entities' assets for his own use and benefit and/or for the use

8  and benefit of other entities controlled by him.

9       118.   As a proximate result of Debtor's conduct, Plaintiff has suffered damages in an

10  amount to be determined at trial.

11       119.   Accordingly, the debt owed by Debtor to Plaintiff, including but not limited to

12  pursuant to his guarantee described *supra*, pursuant to 11 U.S.C. §§523(a)(4) and 523(c)(1).

13  **EIGHTH CLAIM FOR RELIEF**

14  **(For Determination of Dischargeability of Debt Pursuant to 11 U.S.C. §523(a)(6))**

15       120.   Plaintiff realleges and incorporates paragraphs 1 through 119, *supra* as though fully

16  set forth herein.

17       121.   Pursuant to Bankruptcy Code § 523(a)(6) a debt is excepted from discharge "for

18  willful and malicious injury by the debtor to another entity or to the property of another entity."

19       122.   As set forth *supra*, Debtor knowingly presented ineligible invoices, with fraudulent

20  supporting credit insurance confirmations, to Plaintiff for funding knowing that the funding would

21  not be repaid and that Plaintiff would sustain substantial financial damages as a result.

22       123.   The misrepresentations were made at a time when Debtor knew or should have

23  known them to be false and were made with the intent to deceive Plaintiff into advancing the funds

24  for use for Debtor's and/or Debtor's insiders benefit and that Plaintiff would incur damages.

25       124.   The misrepresentations did actually deceive Plaintiff and induced Plaintiff to

26  purchase accounts and advance funds to Yihe, Alaskan Jack's, and Yihe Seafood, which thereby

27  caused Plaintiff to suffer a financial loss.

28       125.   By making the misrepresentations and by committing the fraudulent acts alleged

LEVINSON ARSHONSKY & KURTZ, LLP

1  *supra*, Debtor had the subjective motive and intent to inflict injury on Plaintiff.  Specifically, by

2  knowingly and fraudulently representing to Plaintiff that the Accounts presented to Plaintiff were

3  eligible for funding and that the written financial statements, invoices, and other documents were

4  valid and accurate with the subjective intent of deceiving Plaintiff to continue to lend funds to Yihe,

5  Alaskan Jack's, and Yihe Seafood to Plaintiff's detriment.  Debtor was substantially certain that

6  Plaintiff would be injured by his actions because he is charged with the natural consequences of

7  those actions.

8  126.    Such actions were maliciously, willfully, and fraudulently committed in conscious

9  disregard for the Plaintiff's rights and Debtor knew that Plaintiff would be injured since Plaintiff was

10  unknowingly financing ineligible and/or fraudulent Accounts.

11  127.    Debtor committed all injurious acts without just cause or excuse.  Rather, the

12  fraudulent conduct was committed to fraudulently obtain and induce Plaintiff to continue to loan

13  money and advance funding to Debtor's insider companies, Yihe, Alaskan Jack's, and Yihe Seafood.

14  128.    As a proximate result of Debtor's willful and malicious conduct, Plaintiff has suffered

15  damages in an amount to be determined at trial.

16  129.    Accordingly, the debt owed by Debtor to Plaintiff, including but not limited to

17  pursuant to his guarantee described *supra*, is nondischargeable pursuant to 11 U.S.C. §§523(a)(6)

18  and 523(c)(1).

19  ## PRAYER FOR RELIEF

20  **WHEREFORE**, Plaintiff prays for judgment as follows:

21  On the First through Fourth Claims for Relief:

22  (1)    Denying Debtor's discharge pursuant to 11 U.S.C. § 727(a)(2), (a)(3), (a)(4) and

23  (a)(5);

24  On the Fifth Claim for Relief:

25  (2)    Deeming that Debtor's debt to Plaintiff was "obtained by submission of false

26  financial statements" within the purview of 11 U. S. C. § 523(a)(2)(B);

27  (3)    Excepting Debtor's debt to Plaintiff from discharge under 11 U.S.C. § 523(c)(1);

28  (4)    That Plaintiff have judgment against Debtor in an amount to be determined at trial;

LEVINSON ARSHONSKY & KURTZ, LLP

2353-037/844299_4

LEVINSON ARSHONSKY & KURTZ, LLP

On the Sixth Claim for Relief:

    (5)    Deeming that Debtor's debt to Plaintiff was "obtained by false pretenses, a false representation, or actual fraud" within the purview of 11 U. S. C. § 523(a)(2)(A);

    (6)    Excepting Debtor's debt to Plaintiff from discharge under 11 U.S.C. § 523(c)(1);

    (7)    That Plaintiff have judgment against Debtor in an amount to be determined at trial;

On the Seventh Claim for Relief:

    (8)    Deeming that Debtor's debt to Plaintiff was obtained through "larceny or embezzlement" within the purview of 11 U.S.C. § 523(a)(4);

    (9)    Excepting Debtor's debt to Plaintiff from discharge under 11 U.S.C. § 523(c)(1);

    (10)    That Plaintiff have judgment against Debtor in an amount to be determined at trial;

On the Eighth Claim for Relief:

    (11)    Deeming that Debtor's debt to Plaintiff was obtained through "willful and malicious injury by the debtor to another entity or the property of another entity" within the purview of 11 U. S. C. § 523(a)(6);

    (12)    Excepting Debtor's debt to Plaintiff from discharge under 11 U.S.C. § 523(c)(1);

    (13)    That Plaintiff have judgment against Debtor in an amount to be determined at trial;

On All Claims for Relief:

    (14)    For prejudgment interest at the legal rate;

    (15)    For an award of attorneys' fees and costs;

    (16)    For costs of suit; and

    (17)    For such other and further relief as the Court deems just, equitable, and proper.

Dated: June 21, 2019          LEVINSON ARSHONSKY & KURTZ, LLP


By: */s/ Lori E. Eropkin*
      LORI E. EROPKIN
Attorneys for Creditor Sallyport Commercial Finance
LLC